**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

_____

| | |
|---|---|
| HILLTOP SECURITIES INC. | : |
| Plaintiff, | : |
| v. | : CASE NO: |
| | : |
| ALEJANDRO MARIANO BUGALLO, | : |
| | : |
| Defendant. | : |

_____

## **COMPLAINT**

Plaintiff, Hilltop Securities Inc. ("Hilltop"), by and through its undersigned

counsel, hereby files the following *Complaint* for injunctive relief to preserve the

*status quo ante* against Defendant Alejandro Mariano ("Alex") Bugallo

("Bugallo") for: (i) breach of contract; (ii) misappropriation/conversion of trade

secrets and/or confidential information under Florida Uniform Trade Secrets Act,

Fla. Stat. § 688.001, *et seq*.; (iii) misappropriation of trade secrets under the

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*; (iv) unfair competition; (v) the

Computer Fraud and Abuse Act, 18 U.S.C. § 1836 *et seq.*; and (vi) the Florida

Computer Abuse and Data Recovery Act, Fla. Stat. 668.801 et *seq.*  Hilltop seeks

the immediate return of its confidential and proprietary information that Bugallo

misappropriated by downloading files to a removable storage device and by

emailing files to a personal email account, as well as the other relief set forth

herein, and in support thereof avers as follows:

## I.  THE PARTIES

1.    Hilltop is a Delaware Corporation with a principal place of business in

Dallas, Texas.[1]

2.    Bugallo is an adult individual who Hilltop employed in its Orlando,

Florida office.  Bugallo is a resident of this District with a home address at 1347

Bella Tuscany Cove, Longwood, Florida, 32750.

## II.  JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332

as the parties are diverse and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

4.    Hilltop also brings this action pursuant to the Defend Trade Secrets Act,

18 U.S.C. § 1836, *et seq.*  This Court likewise possesses subject matter jurisdiction

over Hilltop's claims as each arises under the laws of the United States within the

meaning of 28 U.S.C. § 1331.

5.    This Court possesses supplemental jurisdiction over Hilltop's remaining

claims pursuant to 28 U.S.C. § 1367.

6.    Venue is appropriate in this district, as Bugallo conducted business

---

[1] Hilltop is a wholly owned subsidiary of Hilltop Holdings, Inc. a Texas based-diversified
financial holding company specializing in banking, mortgage-origination, and financial advisory.

within the district and the events upon which the allegations in the Complaint are based occurred within this district.

### III.  FACTUAL BACKGROUND

7.    Hilltop is a trusted leader in public finance, providing financial advisory, underwriting, asset management, and associated services from airports to seaports, health care, and cities throughout Florida and the United States.

8.    Hilltop's structured finance/debt capital markets division serves public/private entities and housing finance agencies with a full suite of financing solutions and consulting services, including specialty finance, structured products, housing advisory, and TBA administration.

9.    Hilltop hired Bugallo and Matthew Sansbury ("Sansbury") on October 15, 2018 as Municipal Advisors within Hilltop's public finance division.

10.   Hilltop's public finance division assists local governments, state agencies, and nonprofit corporations to implement financing strategies including the issuance of bonds, and other lending and financing solutions.

11.   In his role as a Municipal Advisor, Bugallo conducted and participated in investment performance, debt analysis, and relationship reviews for the municipal accounts and clients that he serviced at Hilltop.

12.   Bugallo had an intimate working relationships with, and access to information about, each Hilltop client that he served.

13.  Hilltop never authorized Bugallo to retain, use, or disclose Hilltop's its confidential and proprietary information outside the scope of his employment, for his own benefit, or for the benefit of a competitor.

**A.** ***Bugallo's Employment Agreements and Hilltop's Policies Prohibit Him from Using or Disclosing Hilltop's Confidential/Proprietary Information.***

14.  In the course of his employment,[2] Bugallo executed a *Non-Disclosure and Non-Solicitation Agreement* (the "*Agreement*") containing restrictions prohibiting the removal and/or use of Hilltop proprietary information.  See the *Agreement* attached hereto as Exhibits "A."

15.  In consideration of the benefits provided to him by Hilltop, Bugallo agreed in the *Agreement*, *inter alia*, that:

> Employee Promises. Employee acknowledges and agrees that, in the course of Employee's employment with the Company, Employee will have access to and be entrusted with the Company's valuable Proprietary Information.   Employee agrees that such Proprietary Information shall be the exclusive property of the Company and that Employee would not have access to the Company's Proprietary Information but for Employee's employment with the Company.  In consideration for being entrusted with Proprietary Information and other good and valuable consideration, Employee makes the following promise:
>
> (a) Protection of Proprietary Information[3].   Employee promises to protect and maintain the confidentiality of the

---

[2] Bugallo acknowledged this agreement on 1/27/20.  True and correct copy of the acknowledgement is attached hereto as Exhibit "B."

[3] Hilltop Proprietary information includes Confidential Information and Trade Secrets.  See *Agreement*  at ¶1.

Proprietary Information during Employee's employment with the Company, not to take or remove Proprietary Information from the Company's premises or electronic data systems without the Company's prior express permission, to follow all Company policies and procedures for the protection and security of information and to immediately report to management any potential or actual security breach or loss.

(b) Return of Proprietary Information.  Employee agrees to return immediately any and all materials containing or reflecting Proprietary Information in Employee's possession or under Employee's control (i) upon termination of Employee's employment for any reason, or (ii) at any time upon the Company's demand.  Employee further agrees not to take away or retain any originals or copies of Proprietary Information in any form (including, but not limited to, electronically stored Proprietary Information) following the termination of Employee's employment with the Company for any reason.

(c) No Disclosure of Use of Proprietary Information.  For as long as the Proprietary Information constitutes Confidential Information[4] as defined above and/or a Trade Secret under applicable law, Employee shall not, either during Employee's employment with the Company or at any time after such employment ends for any reason, directly or indirectly use or disclose to others any Proprietary Information except in connection with the performance of Employee's authorized duties, as otherwise expressly authorized in writing by the

---

[4] Confidential Information is defined in the *Agreement* as "data and information relating to the business of the Company that is disclosed or becomes known to Employee in connection with Employee's relationship with the Company, has value to the Company and is not generally known to competitors of the Company.  Confidential information includes, but is not limited to: client, customer, borrower, accountholder, and policyholder information .(such as client, customer, borrow, accountholder, and policyholder lists; client, customers, borrower, accountholder, and policyholder data; contracts and agreements with clients  . . . information provided to the Company by its employees, clients, customers, borrowers, accountholders, policyholders, vendors, subcontractors, or other third parties on a confidential basis; . . . business information (such as business plans, business strategies, business development plans, contemplated transactions with third parties, and confidential policies and procedures) . . . and other non-public information of a technical or economic nature relating to the Company's business that could be of value to a competitor.  See *Agreement* at ¶1(a).

Company, as compelled by law or legal process, or as set forth
in section A.5 below.

<u>See</u> Agreement ¶A(2)(a-c).

16.   During his employment Bugallo also signed a *Garden Leave Agreement*
(the "*Garden Leave Agreement*")[5] (the *Agreement* and the *Garden Leave*
*Agreement* will be collectively referred to herein as the "*Agreements*") which
contained provisions identical to those set forth above with respect to proprietary
information.  A true and correct copy of the *Garden Leave Agreement* is attached
hereto as Exhibit "C."

17.   The *Agreements* are governed by the laws of the State of Texas.  <u>Id.</u> at ¶
D(4), C(4).

18.   The *Agreements* are enforceable under Texas and Florida law.

19.   The *Agreements* were and are in full force and effect at all times material
hereto, including the present.

20.   In the scope of his employment, Bugallo had access to Hilltop's
confidential and proprietary information and was familiar with Hilltop's policies
on confidentiality, as well as the great importance Hilltop places on the security of
its information.

21.   Hilltop spent significant time, effort, and money to develop, acquire,

---

[5] Bugallo acknowledged this agreement on 3/2/20 and again on 3/8/21.  True and correct copy of
the transcript reflecting these acknowledgments is attached hereto as Exhibit "D."

maintain, and protect its confidential and proprietary business information, including, *inter alia*, its goodwill; name recognition; reputation; internal personnel and financial information; computer software and systems; manner and method of conducting business; employee names and contact information; training and educational materials; marketing materials and plans; client names and contact information; business strategy documents and reports; internal reports; confidential and proprietary information provided to Hilltop by clients and/or other third parties (hereinafter "Confidential/Proprietary Information").

22.   Hilltop takes reasonable measures and incurs great expense to safeguard its Confidential and Proprietary Information including, among other things: (1) requiring employees to execute confidentiality/non-disclosure agreements; (2) requiring employees to execute garden leave agreements; (3)  maintaining a secure computer network; (4) determining the level of access to certain drives on the "secure" network on an employee by employee basis; (5) using various electronic security measures to prevent unauthorized access; (6) controlling physical access to Hilltop's offices through the use of various electronic access and alarm systems; (7) providing employees with written materials setting forth the policies that require all Hilltop employees to protect confidential and proprietary information; and (8) training its employees concerning the requirements to maintain the confidentiality of Hilltop's Confidential and proprietary information.

23. Hilltop's Confidential/Proprietary Information is among its most valuable assets, provides Hilltop with a competitive advantage, would be very valuable to a competitor and is deserving of trade secret protection.

**B.     *Bugallo Resigns His Employment With Hilltop.***

24. In January 2021, Hilltop terminated Sansbury's employment.

25. Upon information and belief, Sansbury is now employed by RBC Capital Markets, LLC ("RBC"), having started on April 12, 2021.

26. On April 1, 2021, Bugallo verbally resigned his employment from Hilltop.

27. At that time Bugallo also indicated his intent to abide by the thirty-day Notice Period from the *Garden Leave Agreement*.

28. On April 5, 2021, Bugallo sent an email further memorializing his resignation.

29. Pursuant to the *Garden Leave Agreement*, Hilltop has paid Bugallo his normal salary and benefits during this Notice Period.

30. Pursuant to Bugallo's *Garden Leave Agreement*, he remained a Hilltop employee, receiving full benefits and salary, until April 30, 2021

**C.     *Hilltop Uncovers Bugallo's Bad Acts.***

31. Shortly after Bugallo resigned, Hilltop became aware that he had engaged in a course of conduct intended to harm Hilltop, including taking

confidential and proprietary information in anticipation of his resignation.

32.   Specifically, Hilltop learned that access to a number of files containing information on pending transactions for accounts Bugallo had serviced were missing.

33.   In response, Hilltop conducted a review of Bugallo's file access history.

34.   This analysis took substantial time, effort, and expense.

35.   This review revealed a systematic plan by Bugallo to harm Hilltop.

36.   In the course of this analysis and review, Hilltop learned that, in the months prior to his resignation, Bugallo engaged in a campaign to delete files and folders from Hilltop's shared files including the deletion of hundreds of files from Hilltop's network.

37.   Specifically, on February 11, 2021, Bugallo accessed over 70 Hilltop files in short succession, including Requests for Proposals ("RFPs"), "case studies," and templates for numerous Hilltop clients

38.   On February 18, 2021, Bugallo deleted approximately 400 files and folders from Hilltop's network share drive within an approximate six minute time period.

39.   The files included .pdf files pertaining to over 40 Hilltop clients that Bugallo serviced.

40.   Many of the files Bugallo deleted pertain to requests for proposals for

Hilltop services and documents related to Hilltop's servicing of its clients.

41.   Then, on March 1, 2021, Bugallo again accessed over 100 files, which were mostly Debt Maps, pertaining to over 50 Hilltop clients

42.   On March 7, 2021, Bugallo deleted an additional approximately 210 files and folders from Hilltop's network within in an approximate two minute time period.

43.   The files included excel spreadsheets and other files pertaining to over 88 Hilltop clients that Bugallo serviced.

44.   Many of the files Bugallo deleted were "Debt Maps," which are documents Hilltop employees prepare showing the entire debt and lending profile of a client.

45.   Debt Maps are useful and valuable to ascertain which clients will be most likely to require further Hilltop finance services, such as the issuance of new bonds or refinancing of existing debt.

46.   Once deleted, the files detailed above were no longer on Hilltop's network and no longer accessible by other Hilltop employees.[6]

47.   The amount of files Bugallo deleted and accessed on the dates described above was not typical when compared to his other daily activity.

48.   This conduct is not consistent with any legitimate "housecleaning" nor

---

[6] Hilltop has since been able to restore the files.

justified by any credible business explanation.

49. To the contrary, upon information and belief, Bugallo deleted these files in a surreptitious attempt to make it more difficult for Hilltop to service its clients in an effort to convince those clients to move their business to Bugallo at his new employer, RBC.

50. Hilltop also reviewed Bugallo's email activity which revealed that Bugallo emailed Hilltop proprietary information outside of the firm.

51. From February 1, 2021, Bugallo sent over 40 emails from his Hilltop email address to a non-Hilltop personal email address which included attachments containing client information, and proprietary Hilltop information including: a compilation of RFPs between 2018 and 2020 that Hilltop considered, whether Hilltop was selected, and the firm selected if not Hilltop; a listing of Hilltop bond deals including those for Hilltop clients Bugallo did not service; and Hilltop's template pitch book.

52. Bugallo also used a removable storage device (commonly referred to as a "thumb drive" or "flash drive") on his Hilltop owned laptop.

53. On at least four occasions close in time to his resignation – March 8, 2021, March 25, 2021, March 30, 2021, and March 31, 2021 - Bugallo plugged a Kingston Technologies brand device with serial number 070A7C54D4588805 into his Hilltop laptop.

54.   Bugallo downloaded numerous Hilltop files and information from his company laptop to the removable storage device.

55.   For example, on March 8, 2021, Bugallo downloaded over 500 .msg files that appear to contain contact information for Hilltop clients.

56.   Then, on March 31, 2021, Bugallo downloaded over 40 files including .pdf documents and excel spreadsheets relating to Hilltop clients, debt analysis and contract materials.

57.   Bugallo did not leave behind any USB or thumb drives upon his resignation.

58.   The manner and timing in which Bugallo retained particular Hilltop information while obscuring it from Hilltop plainly shows that Bugallo engaged in a concerted and coordinated effort to cause immediate, ongoing, and lasting harm to Hilltop, damage its business operations in the greater Orlando market and beyond, and eliminate lawful competition.

**D.**   ***Hilltop confronts Bugallo***

59.   On April 27, 2021, Hilltop interviewed Bugallo to discuss the results of its investigation.

60.   Bugallo specifically denied having used a removable storage device on the dates in question, however, he admitted to having used a removable storage device periodically throughout his employment.  He also denied having any

12

Kingston UBS flash drive.

61.   Bugallo further denied having deleted mass quantities of files and/or folders but admitted to occasionally deleting files in an effort to "keep the shared file organized."

62.   As set forth above, however, the results of Hilltop's investigation directly contradicted these representations.

63.   Given the volume of documents deleted, quick succession, and targeted deletion efforts, this explanation is clearly without merit.

64.   Bugallo admitted to having emailed himself documents – but suggested that he did so to facilitate printing while working remotely.

65.   Given Bugallo's unsatisfactory and contradictory explanations, on April 29, 2021, Hilltop sent Bugallo a letter demanding the immediate return of all information sent to himself by email and saved on the Kingston flash drive. A true and correct copy of this letter is attached hereto as Exhibit "E."

66.   To date, Bugallo has not responded to Hilltop's demand, necessitating this complaint.

**E.      *Hilltop Has Suffered, and Will Continue to Suffer, Irreparable Harm as a Result of Bugallo's Unlawful Actions and it Requires Injunctive Relief and Other Remedies***

67.   As a direct and proximate result of Bugallo's conduct, Hilltop has suffered, and will continue to suffer, significant irreparable harm, as well as

incalculable economic injury and loss.

68.   It is impossible to calculate the potential harm to Hilltop knowing that Bugallo intends to use Hilltop's information to solicit its clients to RBC.

69.   Indeed, the ongoing nature of Bugallo's unlawful actions necessitates judicial intervention in the form of status quo injunctive relief to preclude Bugallo from retaining, using, and/or disclosing Hilltop' Confidential/Proprietary Information, for his own benefit, or the benefit of others.

70.   In his respective *Agreements* Bugallo acknowledge this irreparable harm and expressly consent to injunctive relief, agreeing, *inter alia*, that:

> **Breach of Agreement and Remedies**.  Employee acknowledges that a breach of this Agreement or the Broker Protocol may result in irrevocable and irreparable harm to the Company that may not be compensable by monetary damages or for which damages may be difficult to calculate.   Accordingly, Employee acknowledges that Employee's breach or threatened breach of this Agreement or the Broker Protocol shall be sufficient grounds for a court of competent jurisdiction in aid of arbitration to grant an injunction and shall entitle the Company to specific performance and other injunctive relief, without bond, restraining Employee from committing such breach. The Company's right to seek injunctive relief shall not limit its right to any other remedies including damages.  If the Company prevails in any action to enforce its rights under this Agreement or the Broker Protocol, Employee shall indemnify the Company for all expenses it incurred, including, but not limited to, reasonable attorney's fees.

See Exhibits "A," "C" at  ¶C(4); B(4).

71.   Further, in light of the significant financial losses incurred by virtue of Bugallo's actions (which are incalculable and ongoing at this time), Hilltop is entitled to all remedies available under law and equity, including, but not limited to

compensatory damages, punitive damages, statutory damages, costs of suit, and attorney's fees in an amount to be proved, as well as any other remedies the Court deems appropriate.

**F.    *Hilltop is Entitled to Injunctive Relief as a Result of Bugallo's Actions***

72.   By virtue of the foregoing, Hilltop has demonstrated a likelihood of success on the merits of a claim for injunctive relief against Bugallo and that a balancing of the equities favors the issuance of such an injunction against Bugallo.

73.   At this time, Hilltop has no adequate remedy at law.

74.   Bugallo consented to injunctive relief in the event he breached his Agreements with Hilltop.  See Exhibits "A," "C" at ¶C(4); B(4).

75.   Unless Bugallo is preliminarily and permanently enjoined from the foregoing conduct, Hilltop will be harmed by the disclosure of trade secrets, client information, and other confidential information that are solely the property of Hilltop and its clients.

76.   The loss of the confidentiality of client records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation will also substantially affect Hilltop standing in the marketplace.

77.   Furthermore, the present economic loss to Hilltop, which is unascertainable and ongoing at this time, and future economic loss, which is presently incalculable, present a significant risk to Hilltop and its business

15

activities.

## COUNT I
## BREACH OF CONTRACT

78.   The allegations contained in paragraphs 1-77 are incorporated herein by reference with the same force and effect as if set forth in full below.

79.   Bugallo signed valid and enforceable contracts with Hilltop.  These *Agreements* preclude Bugallo from, among other things retaining, using, misappropriating, or disclosing Hilltop's Confidential/Proprietary Information.

80.   By virtue of the foregoing conduct, Bugallo knowingly and willfully breached his Agreements with Hilltop and, as a direct and proximate cause of Bugallo's knowing and willful breach of contract, Hilltop has and will continue to suffer great economic injury and loss, all to the direct gain of Bugallo.

81.   As a direct and proximate result of Bugallo's wrongdoing, Hilltop is suffering immediate and irreparable harm.

WHEREFORE, Hilltop respectfully requests judgment in its favor, and against Bugallo, as set forth in its Prayer for Relief.

## COUNT II
## MISAPPROPRIATION/CONVERSION OF TRADE SECRETS (Fla. Stat. § 688.001, *et seq.*) AND/OR CONFIDENTIAL BUSINESS INFORMATION

82.   The allegations contained in paragraphs 1-77 are incorporated herein by reference with the same force and effect as if set forth in full below.

83.   Bugallo misappropriated confidential client information in violation of

the Florida Uniform Trade Secrets Act (FUTSA), Fla. Stat. § 688.001 et seq.

84. At all times material hereto, Bugallo knew, or should have known, that Hilltop's Confidential Information deserves trade secret protection under the Florida Trade Secrets Act inasmuch as:

a. Hilltop invested substantial resources to create, develop, compile, and maintain this information;

b. The information is not known outside of Hilltop;

c. Hilltop takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring its employees to execute confidentiality agreements and other restrictive covenants;

d. The information cannot be replicated, compiled, or recreated by a competitor without substantial time, effort, and expense and is not generally attainable by proper means by the public or any other person who can derive commercial or economic value from its disclosure or use; and

e. Hilltop's Confidential Information is of significant independent economic value to Hilltop and is extremely important in the conduct of its business, and would be extremely valuable to RBC, a competitor.

85. Hilltop disclosed its Confidential Information to Bugallo while he was in

a position of trust and confidence and under circumstances that make it inequitable and unjust for him to have misappropriated the materials and to be using them for his own benefit and for the benefit of RBC.

86.   Bugallo secured Hilltop Confidential Information by improper means sufficient to constitute misappropriation under Fla. Stat. § 688.002(2).

87.   Conduct in violation of the Florida Uniform Trade Secrets Act may be enjoined under Fla. Stat. § 688.003.

88.   Because of the willful nature of the violation, Hilltop is also entitled to exemplary damages as allowed Fla. Stat. § 688.004(2).

89.   In the alternative, if Hilltop's Confidential Information does not constitute trade secrets within the meaning of FUTSA (and it does), Bugallo is nonetheless liable for the wrongful conversion of such proprietary materials.

90.   As a direct and proximate result of the Bugallo's wrongdoing, Hilltop is suffering immediate and irreparable harm.

WHEREFORE, Hilltop respectfully requests judgment in its favor, and against the Bugallo, as set forth in its Prayer for Relief.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
### (Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)

91.   The allegations contained in paragraphs 1-77 are incorporated herein by reference with the same force and effect as if set forth in full below.

92.   While employed by Hilltop, Bugallo obtained access to Hilltop's confidential trade secret information, including, inter alia, client contact, financial, and account information, in both physical and electronic form.

93.   These trade secrets directly relate to products and services used in, or intended for use in, interstate and foreign commerce.

94.   Hilltop derives significant economic benefit from maintaining the secrecy and confidentiality of the above-described trade secrets.

95.   As expressly acknowledged in Bugallo's *Agreements*, Hilltop considers this type of information to be confidential and proprietary, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

96.   Prior to his resignation from Hilltop, Bugallo secured and retained Hilltop's confidential client information by improper means and in breach of his contractual and legal duties sufficient to constitute misappropriation under 18 U.S.C. § 1836 et seq.

97.   Upon information and belief, Bugallo has or intends to communicate Hilltop's confidential information and trade secrets to Sansbury and/or RBC, who can in turn misappropriate and misuse the information for their own financial gain.

98.   As a proximate result of the misappropriation as set forth herein, Hilltop has suffered actual damages.

99.   Bugallo's actions in converting and misappropriating Hilltop's confidential, proprietary and trade secret information for his own gain was willful, wanton, and malicious, and was taken with reckless disregard for the rights of Hilltop.

100. Bugallo's actions have caused and will continue to cause Hilltop irreparable harm if not preliminarily and permanently enjoined.

WHEREFORE, Hilltop respectfully requests judgment in its favor, and against Bugallo, as set forth in its Prayer for Relief.

## COUNT IV
## UNFAIR COMPETITION

101. The allegations contained in paragraphs 1-77 are incorporated herein by reference with the same force and effect as if set forth in full below.

102. Upon information and belief, Bugallo is using, or intends to use Hilltop's Confidential Information, directly, intentionally, and improperly to solicit and induce Hilltop's clients to transfer their accounts to RBC, a direct competitor.

103. At all times material and by virtue of his role with Hilltop, Bugallo knew or should have known that this unfair and unlawful practice would result in significant irreparable injury to Hilltop.

104. Bugallo took these steps with the intention of, and for the purpose of, inter alia, (1) causing harm to Hilltop and (2) using, misappropriating, and/or converting Hilltop's Confidential Information.

20

105. Bugallo's foregoing conduct constitutes unfair methods of competition.

106. Bugallo's above-described actions are the direct and proximate cause of immediate and irreparable harm to Hilltop.

WHEREFORE, Hilltop respectfully requests judgment in its favor, and against Bugallo, as set forth in its Prayer for Relief.

## COUNT V
### (Computer Fraud and Abuse Act 18 U.S.C. § 1836 *et seq.*)

107. The allegations contained in paragraphs 1-77 are incorporated herein by reference with the same force and effect as if set forth in full below.

108. Bugallo intentionally accessed Hilltop's shared drive with the intent to harm Hilltop by deleting certain files and/or removing them from Hilltop's system for use at his new employer.

109. The *Agreement* requires that Bugallo receive express approval prior to taking or removing Proprietary Information from the Hilltop's premises or electronic data systems.

110. Hilltop never gave Bugallo authority to take or remove any information from its systems.

111. In deleting hundreds of files and sending himself others with the intent to harm Hilltop, Bugallo exceeded the authority he had to use Hilltop's computers.

112. Upon information and belief Bugallo remains in possession of Hilltop's confidential and proprietary information.

21

113. Hilltop has suffered a loss because it incurred costs and fees to conduct a damage assessment to determine the extent of Bugallo's wrongdoing and to restore the data that had been deleted.

114. As a direct and proximate result of the foregoing, Hilltop has suffered, and will continue to suffer, great injury and loss, all to the direct gain of Bugallo Hilltop's loss is in excess of $5,000 to conduct a comprehensive damage assessment and restore information on Hilltop's shared file.

WHEREFORE, Hilltop respectfully requests judgment in its favor, and against Bugallo, as set forth in its Prayer for Relief.

## COUNT VI
### (Florida Computer Abuse and Data Recovery Act, Fla. Stat. 668.801 et seq.)

115. The allegations contained in paragraphs 1-77 are incorporated herein by reference with the same force and effect as if set forth in full below.

116. Hilltop's computer systems are password protected.

117. Bugallo did not have authority to remove documents from Hilltop's system.

118. When deleting Hilltop documents and sending them to himself for his personal gain, Bugallo intended to cause harm and loss to Hilltop.

119. Bugallo's conduct has harmed and continues to harm Hilltop.

WHEREFORE, Hilltop respectfully requests judgment in its favor, and against Bugallo, as set forth in its Prayer for Relief.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Hilltop Securities respectfully requests that, due to the ongoing, and unlawful acts of Bugallo, the Court:

a.      Compel Bugallo, and anyone acting in concert with him, to immediately return to Hilltop all of its Confidential/Proprietary Information, or any other information, records, documents, or data obtained from Hilltop, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever; AND

b.      Restrain and ultimately enjoin Bugallo, and anyone acting in concert with him, from using or disclosing all such Confidential/Proprietary Information, or any other information, records, documents, or data obtained from Hilltop; AND

c.      Compel Bugallo to surrender his electronic devices, including, but not limited to, removable storage devices, his personal mobile telephone, laptop, and tablet for the purpose of permanently erasing all Hilltop's Confidential/Proprietary Information, or any other information, records, documents, or data obtained from Hilltop; AND

d.      Restrain and ultimately enjoin Bugallo, and anyone acting in concert with him, from using or disclosing all such Confidential/Proprietary Information, or any other information, records, documents, or data obtained from Hilltop; AND

**e.**     Hilltop further prays the Court will award Hilltop compensatory damages, punitive damages, statutory damages, costs of suit, and attorney's fees in an amount to be proven, as well as any other remedies the Court deems appropriate.

Respectfully submitted,

Dated: <u>May 3, 2021</u>

By:   _/s/ Lyle E. Shapiro_____
Lyle E. Shapiro
Florida Bar No. 120324
**HERSKOWITZ SHAPIRO, PLLC**
Two Datran Center
9130 S. Dadeland Blvd., Suite 1609
Miami, FL 33156
Telephone: (305) 423-1986
Facsimile: (305) 670-3884
E-mail: lyle@hslawfl.com

*Attorney for Plaintiff Hilltop Bank*

and

Michael J. Fortunato, Esquire
Christopher S. Koller, Esquire
Melanie E. Osborn, Esquire
**RUBIN, FORTUNATO & HARBISON, P.C.**
10 South Leopard Road
Paoli, PA  19301
(610) 610-408-2005/2020/2028 (Telephone)
(610) 854-4305/4318/1862 (Facsimile)

*Attorney for Plaintiff Hilltop Securities*